IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARIA SANTIAGO, as Administratrix of the Estate of LUIS ALBERTO QUINONES, Plaintiff<br><br>v.<br><br>THE HOUSING AUTHORITY OF THE CITY OF ERIE,<br>                    Defendant. | C.A. No. 12-74 Erie<br><br>**District Judge McLaughlin**<br>**Magistrate Judge Baxter** |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is respectfully recommended that Defendant's motion to dismiss [ECF No. 8] should be granted as to Plaintiff's state created danger claim set forth at Count IV of the complaint, but denied as to Plaintiff's deliberate indifference claim set forth at Count V of the complaint.

**II.    REPORT**

    **A.    Relevant Procedural and Factual History**

This civil action was commenced on March 13, 2012, pursuant to the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*; the Civil Rights Act of 1964, 42 U.S.C. § 1983; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. The Plaintiff is Maria Santiago, Administratrix of the Estate of her deceased husband, Luis Alberto Quinones ("Quinones"). The Housing Authority of the City of Erie ("HACE") is named as Defendant.

The claims in this case arise from Quinones's death on June 13, 2010, which occurred as a result of head trauma he suffered from a fall down the front steps of his house at 1704 German Street, Erie, Pennsylvania ("subject property"), where both he and Plaintiff resided. (ECF No. 1, Complaint, at ¶¶ 9, 48-51). At all relevant times, the subject property was owned by Defendant

and was leased to Quinones and Plaintiff as part of a federally-funded public housing program for low-income families. (Id. at ¶ 12).

For approximately one year prior to his death, Quinones was treated by Dr. Douglas Grisier, D.O., for multiple medical conditions, including end stage renal failure, type 2 diabetes, hypertension, and coronary artery disease. (Id, at ¶ 13). During this time, Dr. Grisier noted that Quinones was suffering a complication of end stage renal failure known as uremic myopathy, which made it difficult for Quinones to perform a number of daily living activities and adversely affected his ability to walk unassisted. (Id. at ¶¶ 14, 16). As a result, Dr. Grisier prescribed a bathtub transfer bench and a wheelchair. (Id. at ¶ 17). Dr. Grisier also completed a HACE Section 504 Request for Reasonable Accommodations form ("Section 504 Request form"), dated April 20, 2010, noting that Quinones suffered from a "mobile disability," and indicating that Quinones required the following accommodations to be installed at his residence:

> Grab Bar Installation
> Ramps and Landings
> Curb Cuts/Curb Ramps
> Accessible Parking
> Non-skid Flooring
> Adapted Kitchen and Bath Cabinets

(Id. at ¶¶ 18, 19, 21). In addition, Dr. Grisier indicated the following under the heading "Other accommodation requested:"

> Cannot step into bathtub
> Roll-in shower recommended
>
> Wheelchair accessibility needed

(Id. at ¶ 22).[1]

Plaintiff alleges that Dr. Grisier's Section 504 Request form was handed to an unnamed

---

[1] In the Complaint, Plaintiff states that Dr. Grisier's Section 504 Request form is attached as Exhibit A; however, no such attachment was filed with the complaint. Nonetheless, the Court accepts Plaintiff's description of the content of the Request Form for purposes of determining Defendant's motion to dismiss.

employee at the office of the HACE site manager for the housing project where Quinones and Plaintiff lived; however, the requested accommodations were never provided. (Id. at ¶¶ 23-24).

Plaintiff alleges further that another Section 504 Request form was completed on June 1, 2010, by Joan D. Porter ("Porter"), an occupational therapist, who also noted that Quinones suffered from a "mobility disability," as well as a "hearing disability" and "generalized weakness, limited endurance."[2]  As a result, Porter indicated that Quinones required the following accommodations at his residence:

> Grab Bar Installation
> Ramps and Landings
> Curb Cuts/Curb Ramps
> Accessible Parking

(Id.. at ¶¶ 27-28). In addition, under the heading "Other accommodation requested," Porter added the following:

> 2 bedrooms to accommodate hospital bed
> walk/roll-in shower
> proximity to family that assist in care is very helpful.  She has to call them to help frequently due to falls, help getting in home.

(Id. at ¶ 29).

As with the Dr. Grisier's Section 504 Request form, Plaintiff claims that Porter's Request form was handed to an unnamed employee at the office of the HACE site manager for the project in which Quinones resided; yet none of the requested accommodations were provided. (Id. at ¶¶ 30-31).

Plaintiff alleges that on three occasions during the period from April 20, 2010 until

---

[2] As with Dr. Grisier's Section 504 Request form, Porter's Section 504 Request form is not attached to Plaintiff's complaint, despite Plaintiff's indication that it is attached as Exhibit B thereto.  Nonetheless, the Court will also accept Plaintiff's description of the content of Porter's Request form for purposes of determining Defendant's motion to dismiss.

Quinones's death on June 13, 2010, Quinones's stepdaughter, Yolanda Powell ("Powell"), visited the office of the HACE site manager responsible for Quinones's housing project and requested that she provide the accommodations listed on the Section 504 Request forms completed by Dr. Grisier and/or Porter. (Id. at ¶ 35). On the first occasion, Powell allegedly presented Dr. Grisier's Section 504 Request form and requested that the site manager either build a wheelchair ramp for the subject property or move Quinones to other suitable housing already equipped with the same. (Id. at ¶ 36). Plaintiff alleges that the site manager refused Powell's request to build a wheelchair ramp, stating that it was "not allowed." (Id.. at ¶ 37). Although the site manager did suggest alternative housing for Quinones, Plaintiff alleges that the suggested housing was not appropriate. (Id. at ¶ 38).

Later the same week, Quinones's family members located an unoccupied HACE-owned residence in the vicinity of 17th and Cherry Streets in Erie, Pennsylvania ("proposed dwelling") that had many of the accommodations Quinones required. (Id. at ¶ 39). Powell visited the office of the site manager for Quinones's housing project and requested that Quinones be relocated to the proposed dwelling. (Id. at ¶ 40). The site manager responded that the proposed dwelling was under the jurisdiction of another site manager to whom Powell would have to submit her request. (Id. at ¶ 41). Powell then followed up with the appropriate site manager for the proposed dwelling, but was informed that Quinones and Plaintiff could not live in the proposed dwelling because it had three bedrooms and they were only approved for two bedrooms. (Id. at ¶ 42). Powell responded that Quinones and Plaintiff were willing to pay the extra rent for the third bedroom, and the site manager said he would "look into" the possibility; however, no response was ever communicated to Powell, Quinones or Plaintiff. (Id. at ¶¶43-44).

On a third occasion, Powell visited the site manager for Quinones's housing project and again requested either a wheelchair ramp at the subject property or relocation to a more suitable

residence. (Id. at ¶ 45). The site manager allegedly responded "these things take time." (Id. at ¶ 46).

On June 9, 2010, while Quinones was attempting to descend the front steps of the subject property, he fell and suffered a traumatic brain injury, which ultimately led to his death on June 13, 2010.

Plaintiff has raised five claims arising from the foregoing allegations: (i) an unlawful housing discrimination claim under the FHA; (ii) a claim under Section 504 of the Rehabilitation Act of 1973 for Defendant's alleged refusal to grant Quinones's request for reasonable accommodations, thereby denying him equal opportunity to participate in its housing program; (iii) a claim under Title II of the ADA arising from Defendant's alleged refusal to reasonably modify Quinones's living conditions; (iv) a "state created danger" claim under 42 U.S.C. § 1983; and (v) a deliberate indifference claim under Section 1983.

On June 1, 2012, Defendant filed a partial motion to dismiss [ECF No. 8] requesting dismissal of Plaintiff's state-created danger (Count IV) and deliberate indifference (Count V) claims. Plaintiff has since filed a brief in response to Defendant's motion. [ECF No. 10]. This matter is now ripe for consideration.

### B.     Standard of Review

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying

Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

Recently, the Third Circuit Court prescribed the following three-step approach to determine the sufficiency of a complaint under Twombly and Iqbal:
> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011), citing Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S.Ct. at 1947, 1950); see also Great

Western Mining & Min. Co. v. Rothschild LLP, 615 F.3d 159, 177 (3d Cir. 2010).

**C. Discussion**

**1. State Created Danger**

Plaintiff asserts that Defendant's "refusal and indifference, under color of state law, created a danger to Mr. Quinones which resulted in the deprivation of his Constitutional rights under the Fourteenth Amendment to the United States Constitution...," and "[a]s a foreseeable and predictable result ... Mr. Quinones fell on the front steps of his house." (ECF No. 1, Complaint, at ¶¶ 103-104).

"The state-created danger doctrine is an exception to the rule that the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." Soberal v. City of Jersey City, 334 Fed. Appx. 492, 494 (3d Cir. 2009)(internal quotation marks omitted). The exception applies only "when state authority is affirmatively employed in a manner that injures a citizen or renders him more vulnerable to injury from another source than he or she would have been in the absence of state intervention." Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006); see also Sanford v. Stiles, 456 F.3d 298, 304 (2006)(under the state-created danger doctrine, "liability may attach where the state acts to create or enhance a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process").

To prevail on a state-created danger claim, a plaintiff must establish the following four elements:

(1) the harm ultimately caused was foreseeable and fairly direct;

(2) a state actor acted with a degree of culpability that shocks the conscience;

(3) a relationship between the state and the plaintiff existed such that

7

> the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Bright, 443 F.3d at 281 (quotations and footnotes omitted).

"A plaintiff's failure to satisfy any one of the four elements defeats his state-created danger claim." Malar v. Delaware County, 2009 WL 2493775, at *7 (E.D.Pa. Oct. 23, 2009). Nonetheless, the analysis of a state-created danger claim often centers on the fourth element because a state-created danger can exist only where the state has "affirmatively" used its authority to create or enhance the danger to the plaintiff. Bright, 443 F.3d at 282. As the Third Circuit Court explained:

> It is important to stress, for present purposes, that under the fourth element of a state-created danger claim, 'liability under the state-created danger theory is predicated upon the state's **affirmative acts** which work to the plaintiffs' detriments in terms of exposure to danger." D.R. by L.R. v. Middle Bucks Area Vo. Tech. School, 972 F.2d 1364, 1374 (3d Cir. 1992)(*en banc*)(emphasis supplied); Brown v. Grabowski, 922 F.2d 1097, 1100-01 (3d Cir. 1990)(finding that DeShaney holds "that a state's failure to take affirmative action to protect a victim from the actions of a third party will not, in the absence of a custodial relationship ... support a civil rights claim"). It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause.

Id.

The Third Circuit has since clarified that the fourth element requires a plaintiff to "(1) show that a state official affirmatively acted to the plaintiff's detriment and (2) establish direct causation between the affirmative act and the result." Soberal, 334 Fed. Appx. at 495.

Here, Defendant argues that Plaintiff's allegations are "insufficient to establish that HACE affirmatively acted to create a danger or to render Mr. Quinones more vulnerable to danger." (ECF No. 9, Defendant's Brief, at p. 16). The Court agrees. As Defendant correctly

8

points out, "Plaintiff has expressly alleged that HACE is liable for Mr. Quinones's death because [it] failed to take any action to accommodate or otherwise address Plaintiff's requests for reasonable accommodation." (Id. at p. 17). In particular, Plaintiff consistently alleges that the accommodations requested for Quinones "were never provided," were "refused," or were met with casual indifference by Defendant. (ECF No. 1, Complaint, at ¶¶ 25, 31, 34, 37, 44, 47). As the Third Circuit has held, however, the mere failure to act is not sufficient to establish a state-created danger claim. Bright, 443 F.3d at 282.

Nonetheless, Defendant argues that Plaintiff's allegations of "affirmative acts" in this case are similar to those that were found to be sufficient by this Court in Henry v. City of Erie, et al., 1:10-cv-00260 (W.D.Pa. Aug. 19, 2011), *adopted as opinion of the Court*, 2011 U.S. Dist. LEXIS 110562 (W.D.Pa. Sept. 27, 2011), *appeal pending*, No. 11-3738 (3d Cir.). This argument is unavailing.

The claims in Henry arose from a house fire at a subsidized rental property that caused the deaths of the second floor resident and her friend, whose bodies were found lying on the floor of a third floor bedroom. The plaintiff administrators of the decedents' estates alleged that the deaths occurred because the third floor bedroom failed to have a safe, alternate means of egress in case of fire. As a result, the administrators claimed, *inter alia*, that HACE was liable for the deaths under the state-created danger doctrine because a HACE inspector allowed the rental property to pass inspection each and every year, and HACE continued to allow the property to qualify for a housing subsidy, despite the continued absence of a third floor fire exit. The Court found HACE's yearly inspection of the rental property and continued approval of the property for a housing subsidy to be affirmative acts sufficient to pass muster under the state-created danger doctrine.

No such affirmative acts are alleged to have occurred in this case. Although Plaintiff attempts to construe Defendant's repeated refusals to provide the accommodations requested on

9

behalf of Quinones as "affirmative acts," there is little difference between a "refusal" to act and a "failure" to act.  Both are acts of omission, rather than commission.  Accepting Plaintiff's argument in this regard would be tantamount to changing the "state **created** danger" exception to a "state **allowed** danger" exception.  This the Court will not do.[3]

Thus, the Court finds that Plaintiff's allegations are insufficient to establish the fourth element of her state-created danger claim, and such claim should be dismissed accordingly.

### 2. Deliberate Indifference

Plaintiff claims that Defendant was deliberately indifferent to Quinones's civil, constitutional, and statutory rights because it knew of Quinones's debilitating medical conditions and the accommodations he required, yet it failed to take reasonable measures to provide the accommodations that would have likely prevented Quinones's fall and resultant death. (ECF No. 1, Complaint Count V).  Although Defendant has moved to dismiss this claim, it has failed to set forth specific grounds on which to do so.  Instead, Defendant has simply treated Plaintiff's deliberate indifference claim as an extension of her state created danger claim and apparently seeks dismissal of both claims on the same grounds.  This is misguided, as deliberate indifference, by its very nature, does not require an affirmative act.  Rather, "[d]eliberate indifference requires that an official with authority to address the alleged discrimination has 'both knowledge that a harm to a federally protected right is substantially likely, and ... fail[s] to act upon that likelihood.'" Chambers v. School Dist. Of Philadelphia Bd. Of educ., 827 F.Supp.2d 409, 425 (E.D.Pa. 2011)(citations omitted).  This is precisely what

---

[3] Plaintiff also argues that the HACE site manager's suggestion of allegedly inappropriate housing in response to Powell's first request for accommodations (See ECF Nos. 37-38) was an "affirmative act" within the context of the state created danger exception.  Even assuming this could be construed as an affirmative act, however, there is no correlation between the suggestion of inappropriate housing and the fall that caused Quinones's death.

Plaintiff has alleged. Thus, Defendant's motion to dismiss Plaintiff's deliberate indifference claim should be denied.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant's motion to dismiss [ECF No. 8] should be granted as to Plaintiff's state created danger claim set forth at Count IV of the complaint, but denied as to Plaintiff's deliberate indifference claim set forth at Count V of the complaint.

In accordance with the Federal Magistrates Act, 28 U.S.C. ' 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file objections will waive the right to appeal. <u>Brightwell v. Lehman</u>, 637 F. 3d 187, 193 n. 7 (3d Cir. 2011).

<u>/s/ Susan Paradise Baxter</u>
SUSAN PARADISE BAXTER
United States Magistrate Judge

Date: September 7, 2012

cc: The Honorable Sean J. McLaughlin
United States District Judge

11